UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CRYSTAL C.,[1]

                              Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

DECISION & ORDER

22-CV-6358MWP

## PRELIMINARY STATEMENT

Plaintiff Crystal C. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 11).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 9). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

I.   **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");
>
> (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and
>
> (5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 16-24).[2]  Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 23, 2020, the application date. (Tr. 16). At step two, the ALJ concluded that plaintiff had the following severe impairments: interstitial cystitis,[3] status post arthroscopy with lateral release, arthralgia of the right knee, anxiety disorder, major depressive disorder, and intellectual disability. (*Id.*). He also concluded that plaintiff had a non-severe history of deep vein thrombosis and pulmonary embolism. (Tr. 17). With respect to plaintiff's mental limitations, the ALJ found that she suffered from moderate difficulties in understanding, remembering, and applying information; no difficulties in interacting with others; moderate difficulties in maintaining concentration, persistence, and pace; and mild difficulties in adapting and managing herself. (*Id.*).  At step three, the ALJ determined

---

[2] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

[3] Interstitial cystitis is a chronic, painful condition of the bladder. (Tr. 493). Symptoms can include increased urgency and frequency in urinating and pain or burning in the pelvic area. (*Id.*). As the Social Security Administration's Ruling on Evaluation of Interstitial Cystitis notes, interstitial cystitis is associated with urinary frequency that "can necessitate trips to the bathroom as often as every 10 to 15 minutes, day and night." Titles II & XVI: Evaluating Cases Involving Interstitial Cystitis (IC), SSR 15-1P, 2015 WL 1292257, *8 (Mar. 18, 2015).

that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 17-18).

The ALJ concluded that plaintiff had the RFC to perform sedentary work "except all postural limitations on an occasional basis," and could not climb ropes, ladders, and scaffolds. (Tr. 18). He further concluded that she needed "ready access to restroom facilities at the workplace." (*Id.*). He limited her work to simple, routine, and repetitive tasks and found that she could work in a low stress job, defined as requiring only occasional decisionmaking, changes in the work setting, and on-the-job judgment. (*Id.*). At steps four and five, the ALJ determined that plaintiff could not perform her past relevant work but that positions existed in the national economy that plaintiff could perform, including document preparer, order clerk, and polisher. (Tr. 23-24). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 24).

### III.     Plaintiff's Contentions

Plaintiff contends that the ALJ's determination is not supported by substantial evidence and is the product of legal error. (Docket # 8-1). Her argument centers on the ALJ's alleged failure to properly assess the amount of time she would be off-task at work for a variety of reasons. (*Id.*). First, plaintiff contends that the ALJ failed to assess the amount of time plaintiff would be off-task for restroom breaks as a result of her interstitial cystitis. (*Id.* at 9-14). In addition, she contends that the ALJ erred by failing to consider the amount of time she would be off-task due to her psychiatric conditions and intellectual disability (*id.* at 14-18) and her medical appointments (*id.* at 18-19). Plaintiff maintains that because the ALJ failed to accurately account for plaintiff's limitations when examining the vocational expert, the vocational expert's testimony cannot constitute substantial evidence in support of the ALJ's decision. (*Id.* at 19-20).

IV.     **Analysis**

Plaintiff contends that the ALJ erred by failing to assess the amount of time she would be off-task for restroom breaks.  (*Id.* at 9-14).  Considering the specific facts of this case, I find that, although the ALJ concluded that plaintiff would require "ready access to restroom facilities," he should also have evaluated whether plaintiff's interstitial cystitis could be accommodated by customary breaks or whether her symptoms would cause her to be off-task to a degree that could be work preclusive.  That omission was error that requires remand.

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

"It is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC." *Jones v. Comm'r of Soc. Sec.*, 2016 WL 2354262, *5 (N.D.N.Y. 2016) (citing 20 C.F.R. §§ 404.1527, 416.945).  "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his decision[;] he [i]s entitled to weigh all of the evidence

6

available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).

In considering reports of pain and other limitations, the ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citation omitted).  In doing so, the ALJ is permitted to "partially credit [p]laintiff's testimony regarding her own limitations and assess more restrictive . . . limitations than those identified by the consultative examiners," *Mary Diane K. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 270, 276 (W.D.N.Y. 2021), and it is not necessarily error for the ALJ to "give[] a claimant the benefit of the doubt and assess[] limitations more severe than those supported by the medical evidence of record based on the claimant's subjective complaints," *Melissa D. v. Comm'r of Soc. Sec.*, 2023 WL 2364814, *3 (W.D.N.Y. 2023).

Nevertheless, "to enable [a reviewing court] to decide whether the determination is supported by substantial evidence," *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984), an ALJ must sufficiently "explain the link between his RFC assessment and the record evidence," *Paul v. Colvin*, 2016 WL 6275231, *2 (W.D.N.Y. 2016).  "Remand may be appropriate . . . where . . . inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013); *see also Wright v. Colvin*, 99 F. Supp. 3d 328, 332 (E.D.N.Y. 2015) ("the crucial factors in any determination must be set forth with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence[;] [t]o fulfill this burden, the ALJ must adequately explain his reasoning in making the findings on which his ultimate decision rests") (quotations and brackets omitted).

Here, the ALJ determined at step two that plaintiff's interstitial cystitis was a severe impairment. (Tr. 16). In the portions of his decision discussing this condition, the ALJ acknowledged plaintiff's reports that she has constant pain and runs to the bathroom every ten to thirty minutes, letters from plaintiff's sons and friend discussing plaintiff's symptoms, and some of the medical records related to the condition. (Tr. 19-22). The ALJ then concluded that he "fully accounted for the claimant's urinary difficulties and interstitial cystitis by including ready access to restroom facilities at the workplace." (Tr. 22).

Many courts reviewing RFCs that include toileting accommodations have "explicitly delineate[d] between a claimant's 'access' to restroom facilities versus an allowance of breaks," *Dunsford v. Comm'r of Soc. Sec.*, 2023 WL 2242083, \*7 (N.D.N.Y. 2023), and have reversed or remanded in order for ALJs to "make specific findings regarding the frequency and length of anticipated bathroom breaks," *Lowe v. Colvin*, 2016 WL 624922, \*6 (W.D.N.Y. 2016) (remanding where ALJ failed to conclude "whether [p]laintiff's specific needs for frequency of bathroom use [were] compatible with ordinary, acceptable breaks . . . or would be too frequent to be acceptable"); *Shamar R. v. Kijakazi*, 2023 WL 415097, \*6 (W.D.N.Y. 2023) (finding that ALJ was required "to make specific findings regarding the frequency and anticipated length of bathroom breaks [p]laintiff would require to tend to his toileting needs" where plaintiff was repeatedly diagnosed with and sought medical treatment for Crohn's disease and irritable bowel syndrome, and a consultative examiner reported that plaintiff's symptoms could interfere with his routine); *Darden v. Comm'r of Soc. Sec.*, 2019 WL 4462728, \*4 (W.D.N.Y. 2019) (finding "impermissibly vague" ALJ's attempt to accommodate plaintiff's gastrointestinal problems by including in the RFC "ready access" to a bathroom and noting ALJ's failure to assess whether frequency and duration of restroom breaks "would cause [plaintiff] to be off-task or away from

his workstation too often"); *Bowler v. Comm'r of Soc. Sec.*, 2019 WL 1367682, *4 (W.D.N.Y. 2019) (noting that the Social Security Administration's guidance on evaluating interstitial cystitis directs ALJs to discuss the effect a claimant's symptoms would have on her ability to perform full-time competitive work); *Vasquez v. Comm'r of Soc. Sec.*, 2019 WL 765260, *3-4 (E.D.N.Y. 2019) (where RFC provided for access to a restroom less than 75 feet away, the ALJ should have considered whether the frequency with which plaintiff used the restroom further affected plaintiff's RFC); *Stone v. Colvin*, 2016 U.S. Dist. LEXIS 92420, *12 (W.D.N.Y. 2016) (ALJ erred in failing to make specific findings regarding frequency and length of anticipated bathroom breaks where record is unclear whether plaintiff's interstitial cystitis symptoms would cause "unduly frequent bathroom breaks").  In this case, the ALJ apparently credited the opinion of consultative examiner Lee Saltzgaber, M.D., who found that plaintiff needed ready access to a bathroom (Tr. 673), but failed to make any finding regarding the frequency and time plaintiff would require to use the restroom, particularly in view of plaintiff's testimony that she "runs" to the bathroom every ten to thirty minutes.[4]  "Even if this [c]ourt were to assume that the ALJ implicitly decided that [plaintiff's] need for a restroom would not exceed [the maximum], the [c]ourt is left to speculate as to how the ALJ reached such a determination." *Tina M. v. Comm'r of Soc. Sec.*, 2021 WL 1298492, *6 (W.D.N.Y. 2021); *see also Deborah M. v. Kijakazi*, 2022 WL 2274780, *10 (N.D.N.Y. 2022) ("[w]ithout any explanation as to why the ALJ evidently concluded that an RFC without a significant level of absenteeism [or time off-task] was justified, the [c]ourt is left to conclude that the ALJ erred in coming to [p]laintiff's RFC, and that finding

---

[4] Remarkably, the ALJ did not address or cite the Social Security Administration's ruling on interstitial cystitis in his decision.  *See also Bowler v. Comm'r of Soc. Sec.*, 2019 WL 1367682 at *4 ("[t]he inexplicable failure of the ALJ to discuss or address the Social Security Administration's specific policy and guidance on evaluating [interstitial cystitis ("IC")] . . . is especially troublesome given this medical record[;] . . . [f]inally, SSR 02-2P[, replaced by SSR 15-1P,] directs the ALJ to consider whether, if appropriate, IC medically equals a listing[;] . . . [t]he ALJ never utilized the guidance in addressing whether plaintiff's IC met or equaled a listing").

was not supported by the substantial evidence in the record[;] [r]emand is therefore appropriate for the agency to consider the evidence regarding [p]laintiff's absenteeism and off-task behavior in taking frequent restroom breaks").

Although none of the consultative and state agency medical providers[5] estimated how often and for how long plaintiff would need to use the restroom during a workday, the record contains various notations recording plaintiff's complaints of the frequency with which she needs to use the restroom. *See also Tina M. v. Comm'r of Soc. Sec.*, 2021 WL 1298492 at *6 n.8 (noting that the lack of any medical opinion regarding the frequency and length of time plaintiff would need to use the bathroom and the ALJ's discounting of plaintiff's own testimony created an impermissible gap in the record). For example, she reported to her physician that she uses the restroom every fifteen to thirty minutes during the day and five to ten times overnight (Tr. 728), and she testified that the night before her testimony she had an accident despite having a "potty" next to her bed (Tr. 139), that she goes to the bathroom multiple times per hour (Tr. 138-39 (noting that she runs to the bathroom every ten to forty or thirty to forty minutes)), that she cannot "make it" if she has to wait more than two or three minutes before accessing a bathroom and that she has to wear adult diapers (Tr. 140), and that she had an accident several weeks before the hearing, twenty minutes after she underwent a cystoscopy (Tr. 140-41). Additionally, plaintiff has repeatedly reported urinary problems to treating physicians (*see* Tr. 490-94, 503-507, 530-32, 682-83, 727-34, 778-88), and she testified that it is difficult for her to concentrate on other things when her "bladder starts to fill up" and "the pain starts." (Tr. 142). This evidence, and the ALJ's failure to assess the frequency and length of expected restroom breaks, is especially significant because the vocational expert testified that the need for

---

[5] It does not appear that the state agency physicians had access to all of the medical records pertaining to plaintiff's interstitial cystitis. (*Compare* Tr. 179-82, 186, 199-203, 207 *with* Tr. 420, 727-34, 778-88).

two, three-minute breaks per hour, in addition to regularly scheduled breaks, would be work preclusive. (Tr. 152-53). In light of this record, remand is necessary to allow the ALJ to assess whether plaintiff's symptoms would result in her being off-task to such a degree as to be work preclusive.[6]

      Having concluded that remand is required, I need not address any other specific challenges to or perceived deficiencies in the ALJ's decision. That said, for the benefit of proceedings on remand, I note that the ALJ should consider addressing whether plaintiff's other severe mental and physical conditions affect the ALJ's off-task assessment.

## CONCLUSION

      For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                              *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                              United States Magistrate Judge

Dated: Rochester, New York
        July 27, 2023

---

[6] Although the ALJ referred to various normal findings (Tr. 21-22), the ALJ failed to explain how those specific findings – including, *inter alia*, no stricture of the bladder, tumor stones, inflammation, suspicious bladder masses, or Hunner's ulcers – undermine claimant's statements concerning the intensity and limiting effects of her symptoms of interstitial cystitis. *See Cecelia J. v. Comm'r of Soc. Sec.*, 2021 WL 431673, *3 (W.D.N.Y. 2021) ("[i]n his discussion of the record evidence, the ALJ does not explain how the evidence he cites supports the functional limitations he imposes[;] [r]ather, he summarizes the medical evidence . . . and then concludes by stating that such evidence supports the limitations he found; he articulates no underlying rationale"); *Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 100 (W.D.N.Y. 2020) ("[i]t is the ALJ's responsibility … to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review") (quotations omitted).